[Civ. No. 62911. Second Dist., Div. Four. May 17, 1982.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

762

COUNSEL

John H. Larson, County Counsel, and Charles J. Moore, Deputy County Counsel, for Plaintiff and Appellant.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Respondents.

OPINION

**KINGSLEY, J.**—The county appeals from a judgment denying its petition for a writ of mandate to compel reimbursement to it for funds expended under section 1026.5 of the Penal Code. We reverse the judgment with directions.

This case is an aftermath of the decision of the Supreme Court in *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097]. Prior to that decision, a person committed to a state hospital after a finding of not guilty by reason of insanity, could be kept in confinement indefinitely, subject only to an annual proceeding for release in which proceeding he bore the burden of proving recovery. In contrast, persons committed to a state hospital under the mentally disordered sex offender act (MDSO) could not be confined for a period longer than the maximum term for the offense underlying their commitment, unless that confinement was extended by a proceeding under section 6316.2 of the Welfare and Institutions Code—a proceeding in which the burden of proof was on the People.

Responding to that decision, the Legislature, in 1979, by an urgency statute effective on September 28, 1979, enacted section 1026.5 of the Penal Code, limiting the maximum confinement of persons committed as criminally insane to the maximum term for the underlying offense and providing, for persons whose underlying offense was of a violent nature, a procedure for extension of confinement patterned after the MDSO provision.

Under article XIII B of the state Constitution and section 2201 et seq. of the Revenue and Taxation Code, the state has provided for reimbursement by the state of certain "mandated" costs incurred by a local agency. So far as is here pertinent, subdivision (a) of section 2207 pro-

vides for such reimbursement for costs incurred as a result of "any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program." The effect of paragraph (2) of subdivision (b) of section 2253.2 of the Revenue and Taxation Code is to exclude laws apparently falling under section 2207 which merely affirm "for the state that which had been declared existing law by regulation or by action of the courts."

I

The gist of the respondents' position here is that *In re Moye* did not increase any cost to the county and that it merely declared then existing law ultimately made statutory by section 1026.5.

We reject that position. *In re Moye* did no more than to declare unconstitutional the provisions of the law which required a person committed under section 1026 of the Penal Code bear the burden of proof in a proceeding for his release to be an unconstitutional deprivation of equal protection. The opinion recommended, but did not require, the procedure provided in section 1026.5. It suggested that resort to the provisions of the Lanterman-Petris Act might afford equal protection. Had the Legislature been content to rely on that suggestion, an arguable case could have been made that costs of following the Lanterman-Petris procedure would not have increased the county's otherwise costs.[1] But the Legislature was unwilling to rely on that judicial suggestion. The Lanterman-Petris procedure, at the most, could result in a 90-day commitment based on conduct after those proceedings had begun. It did not provide either for a commitment extending for the term prescribed for a crime, nor did it provide for a potentially indefinite series of two-year commitments. ■ In short, section 1026.5 sets forth an entirely new program for dealing with violent persons found not guilty by reason of insanity; it did not parallel the Lanterman-Petris program. What it did was to parallel the MDSO program, not theretofore available for the criminally insane.

Although, in enacting section 1026.5, the Legislature included, as section 5 of chapter 1114,. Statutes of 1979, a routine statement that it did not fall within sections 2231 or 2234 of the Revenue and Taxation Code, that section also expressly reserved the right of a local agency to

---

[1]A proposition which we regard as fallacious, since section 1026.5 does involve the county, through its district attorney, in dealing with a group of persons not normally subject to Lanterman-Petris procedure.

pursue the remedy here sought.[2] In section 6 of that statute, the Legislature itself recognized the distinction we have above pointed out. The statute was declared an urgent statute, with the expressed reason given as follows: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: [¶] Presently, no statutory procedures are available to provide for extended commitments, under certain conditions, for criminal defendants who have been confined pursuant to a specific term of commitment stated in the commitment order of the court. In order to provide the maximum protection to the public, it is necessary that this act take immediate effect."

## II

We turn to consider certain procedural issues raised by the briefs.

(a) The county here argues that the decision of the Board of Control adverse to its claim did not include any findings of fact. No such findings were required or even appropriate. The issue before the board and before us is merely a matter of law.

■ (b) Respondents argue that the state is not a proper party to these proceedings. We agree. Sections 2250 et seq. of the Revenue and Taxation Code set out an elaborate procedure for dealing with claims such as are herein involved. Under section 2250 a claimant first submits its claim to a statutorily expanded Board of Control, as was done here. After a hearing (§§ 2253 and 2253.2) the board either finds in favor of the claimant or rejects the claim. If the claim is approved, the board reports that fact to the Legislature for legislative action (§ 2255); if it rejects the claim, its decision may be attacked, as here, by a proceeding under section 1094.5 of the Code of Civil Procedure.

It follows that the case at bench involves only the board; the state itself becomes involved only where the board has reported a favorable action to the Legislature.

---

[2]"SEC. 5. Notwithstanding Section 2231 or 2234 of the Revenue and Taxation Code, no appropriation is made by this act pursuant to these sections because this act merely affirms for the state that which has been declared existing law or regulation by action of the courts. It is recognized, however, that a local agency or school district may pursue any remedies to obtain reimbursement available to it under Chapter 3 (commencing with Section 2201) of Part 4 of Division 1 of that code."

The judgment is reversed with directions: (a) to dismiss the State of California as a party; and (2) to issue a writ of mandate to the board, requiring it to vacate its decision in this matter and to approve the claim, subject to the board's determination under section 2254 as to the dollar amount of the claim.

Woods, P. J., and McClosky, J., concurred.